# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:15-cv-00136-MR

| | |
|---|---|
| CHRISTOPHER LEE BROOKS, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CAROLYN COLVIN, Acting )<br>Commissioner of Social )<br>Security, )<br>)<br>Defendant. )<br>) | **MEMORANDUM OF**<br>**DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 9] and the Defendant's Motion for Summary Judgment [Doc. 10].

## I. PROCEDURAL HISTORY

On November 9, 2012, the Plaintiff, Christopher Lee Brooks, filed applications for disability and disability insurance benefits, alleging an onset date of September 30, 2006. [Transcript ("T.") 19, 235, 240]. The Plaintiff's applications were denied initially and on reconsideration. [T. 106, 115, 127, 135]. Upon the Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on December 8, 2014. [T. 40-59]. Appearing at the hearing were the Plaintiff, represented by Holly Fairbarn;

Kathleen House Robbins, vocational expert; and Dr. Michael Murray, the Plaintiff's treating physician. [T. 42].

On December 11, 2014, the ALJ issued a written decision denying the Plaintiff benefits. [T. 19-34]. The Appeals Council denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 1-5]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005)

(internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013).

## III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2012). The claimant "bears the burden of proving

that he is disabled within the meaning of the Social Security Act." English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993). In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

At the first step, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. 20 C.F.R. §§ 404.1520; 416.920. If not, the case progresses to the second step where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies or a combination thereof which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id. Third, if a severe impairment is shown and meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. 404, Appendix 1 to Subpart P, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. Fourth, if the severe impairment does not meet any of the Listings, then the ALJ determines the claimant's residual functional capacity ("RFC") and reviews the physical and mental

4

demands of work done in the past. If the claimant can still perform his/her prior work despite the severe impairment, then a finding of not disabled is mandated. Id. If the claimant has a severe impairment but cannot perform past relevant work, then the case progresses to the fifth step where the burden shifts to the Commissioner. At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work that exists in substantial numbers in the national economy. Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006) (noting Commissioner bears evidentiary burden at step five). The Commissioner may meet this burden by relying on the Medical–Vocational Guidelines ("Grids") found at 20 C.F.R. 404, Appendix 2 to Subpart P, if applicable, or by calling a vocational expert to testify. 20 C.F.R. §§ 404.1566; 416.966; 416.969. If the Commissioner succeeds in shouldering her burden at step five, the claimant is not disabled.

    If the ALJ determines that a claimant is disabled, and there is medical evidence of drug or alcohol use, the ALJ must make an additional determination before benefits may be awarded. An otherwise eligible claimant will be denied benefits where the ALJ finds that the claimant's drug or alcohol use is a "contributing factor material to the determination of disability." See 20 C.F.R. §§ 404.1535, 416.935; 42 U.S.C. §§ 423(d)(2)(C),

1382c(a)(3)(J) (denying benefits to claimants whose drug or alcohol use is a "contributing factor material to the determination of disability"); <u>Mitchell v. Commissioner of the Social Security Administration</u>, 182 F.3d 272, 274 (4th Cir. 1999) (upholding as Constitutional, the denial of benefits based upon a determination that substance use is a material contributing factor to the determination of disability).

## IV. THE ALJ'S DECISION

At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since his alleged onset date, September 30, 2016. [T. 22]. At step two, the ALJ found that the Plaintiff had severe impairments of alcohol abuse, affective disorder, anxiety-related disorder, personality disorder, and schizoaffective disorder. [T. 22]. At step three, the ALJ found that those impairments, *inclusive of the impairments and symptoms caused by the Plaintiff's substance use disorder*, met the Listings. [T. 23-24].[1] Specifically, the ALJ found that, when using substances, the Plaintiff had marked restriction of activities of daily living; marked difficulties in social

---

[1] To meet the Listings' requirement for disability, the impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes in decompensation, each of extended duration.

6

functioning, and marked difficulties maintaining concentration, persistence, or pace. [T. 23].

Because there was medical evidence of a substance use disorder, the ALJ proceeded to determine whether the substance use disorder was a "contributing factor material to the determination of disability." Therefore, the ALJ proceeded to evaluate the nature and extent of Plaintiff's impairments, independent of those impairments and symptoms the ALJ found were caused by Plaintiff's substance use. In this latter evaluation, the ALJ found that, if the Plaintiff stopped the substance use, the Plaintiff's impairments would not, either individually or in combination, meet or medically equal any impairment in the Listings. [T. 24-26]. The ALJ then assessed the Plaintiff's RFC independent of substance use:

> If the claimant stopped the substance use, the claimant would have the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is able to understand and remember simple one to three step instructions; the claimant will have some distractibility and slowed work pace due to mental symptoms but the claimant is able to maintain attention and concentration for two hour periods over an eight hour day in order to carry out above tasks at a nonproductive pace but would have increasing difficulty as complexity increases; the claimant can accept instructions from supervisors and interact appropriately with the public and coworkers in a social setting and could relate on a basic level well enough for routine work interactions; and the claimant may be slow to adapt to change but can function with a stable work assignment, and the claimant could be aware of hazards, to negotiate transportation to work, and plan for simple tasks.

7

[T. 26].

At step four, the ALJ found that the Plaintiff had no past relevant work. [T. 32]. Finally, at step five, the ALJ found that, excluding the Plaintiff's substance use and in light of Plaintiff's age, education, work experience and RFC, there exists a significant number of jobs in the national economy that the Plaintiff can perform. [T. 33]. Based upon these findings, the ALJ found that the Plaintiff's substance use disorder is a contributing factor material to the determination of disability. [T. 33]. As a result, the ALJ concluded that the Plaintiff is not "disabled" within the meaning of the Act, at any time from the alleged onset date through the date of his decision. [T. 33-34].

## V. FACTUAL BACKGROUND

The following is a summary of the findings made by the ALJ which are relevant to the matters before this Court. In December 2012, the Plaintiff was examined by Dr. Newton, a consultative psychologist. [T. 27]. Dr. Newton made findings both abnormal and benign, and opined that the Plaintiff's social and concentration limitations would only have a minimal impact on Plaintiff's ability to work. [T. 27-28]. Dr. Newton further opined that, due to his history of medical noncompliance and intermittent mental health treatment, Plaintiff's impairments would remain unstabilized and continue to impact his ability to make rational health decisions regarding

employability and activities of daily living. [T. 28]. The ALJ noted evidence that the Plaintiff had struggled with substance use since adolescence, but he made no finding regarding whether Plaintiff was using substances at the time of Dr. Newton's exam. [T. 27].

In early 2013, two State agency consultants rendered opinions, relying in part upon Dr. Newton's opinion and findings, to which they attributed great weight. As noted by the ALJ, the consultants opined that the Plaintiff had mild limitations in daily activities, moderate limitations in social functioning, and mild limitations in maintaining concentration, persistence, or pace. [T. 30 (citing T. 68-78, 90-101)].

In February 2014, Plaintiff was admitted to, and eventually completed, a thirty-eight day substance use treatment program. [T. 28]. In April 2014, following his detox, Plaintiff began treatment with RHA Health Services. [T. 28, 459]. Dr. Murray, who worked at RHA Health Services, first met the Plaintiff in July 2014. The ALJ noted evidence that the Plaintiff was struggling with alcohol at this time. [T. 30]. Dr. Murray continued treating the Plaintiff through the time of the December 2014 hearing, and the ALJ identified him as the Plaintiff's treating provider. [T. 30].

While still under Dr. Murray's care, the Plaintiff sought substance use treatment again in September 2014, and Plaintiff was admitted into a forty-

day treatment program. [T. 29]. In November 2014, following the Plaintiff's successful completion of the treatment program, Dr. Murray prepared a written report of his assessment of the Plaintiff's treatment, diagnosis, and prognosis. [T. 30 (citing T. 454-460)]. In his report, Dr. Murray noted that Plaintiff was in early remission from his substance abuse, and found that Plaintiff still had marked social and concentration limitations that were independent of his substance use. [T. 30].

At the December 2014 hearing, Dr. Murray testified that he had been working with the Plaintiff for six to seven months, that Plaintiff had been compliant with his substance use treatment the last couple of months, and that, independent of substance abuse, the Plaintiff had a significant number of symptoms that would interfere with his ability to interact socially and concentrate on tasks. [T. 51-53]. At the hearing, the ALJ cross-examined Dr. Murray regarding his assessment of the Plaintiff's impairments independent of his substance use.

> ALJ: It is my understanding . . . that it takes maybe six month[s] to a year window to find out how [a person]'s going to do without substance abuse. Is that correct, or am I wrong?
>
> Dr. Murray: I can recognize with even a couple of months of sobriety what appears to be some underlying symptomology that's not related to the substances. And in [the Plaintiff's] case, so much of his background to me suggests a primary psychiatric condition . . . an underlying psychiatric problem in addition to the substance abuse problem . . . .

[T. 53].

Approximately five months after the December 2014 hearing, Dr. Murray prepared a follow-up opinion, in which he opined that after more than six months' sobriety, Plaintiff's impairments remain severe and incapacitating. [T. 574]. The Appeals Council incorporated this opinion into the record, but it concluded that the letter did not form a basis to overturn the ALJ's decision. [T. 1-5].

In his written decision, the ALJ did not assign a weight to Dr. Newton's opinion, nor state the reasons for any weight given. [See T. 27-28]. The ALJ attributed "some weight" to the consultants' opinions, "as their opinions are also consistent with the evidence of record." [T. 31]. The ALJ explained that he gave treating provider Dr. Murray's opinion "little weight" because, among other things, the opinion was based on a few examinations over a short period of time during which the Plaintiff was coming out of detox, and because Dr. Murray's opinion was inconsistent with findings from the doctor's own recent observation. [T. 31].[2] The ALJ also found that Dr.

---

[2] Specifically, the ALJ referenced Dr. Murray's recorded observation of the Plaintiff following the Plaintiff's discharge from a forty-day substance use program, wherein Dr. Murray noted, "the claimant's thoughts were logical, coherent, and goal directed. Abstract reasoning was noted to be intact, and associations were within normal limits. Some delusions and visual hallucinations were noted, but the claimant was alert and oriented to time, place, person, and his recent and remote memory were noted as intact." [T. 31 (citing T. 507, 510)].

11

Murray's opinion "depart[ed] substantially from the rest of the evidence of record." [T. 31].

## VI. DISCUSSION

The Plaintiff argues that remand is necessary because the ALJ failed to weigh, and state the weight given to, the opinion of Dr. Newton, and improperly weighed the opinion of Dr. Murray, Plaintiff's treating provider. Plaintiff further argues that these and other errors resulted in the ALJ improperly assessing Plaintiff's RFC and the materiality of Plaintiff's substance use. [See Doc. 9-1].

The regulations mandates an ALJ weigh each medical opinion and state the weight attributed to each opinion. 20 C.F.R. §§ 404.1527, 416.927; SSR 96-6p. Medical opinions are statements from physicians, psychologists, or other acceptable medical sources that reflect judgments about the nature, severity, or limitations caused by a claimant's impairment. Id. If a medical opinion from a treating source is well supported by medically acceptable techniques and is not inconsistent with the other substantial evidence in the record, the opinion is entitled to controlling weight. 20 C.F.R. §§ 404.1527(c), 416.927(c).

If a treating source's medical opinion is *not* well supported or is inconsistent with other substantial evidence, the ALJ need not give the

opinion any significant weight. Where an ALJ does not give the opinion of a treating source controlling weight, however, the ALJ must "give good reasons" for the weight given. Id. In assessing the weight of non-controlling medical opinions, ALJs may consider factors including: the length of the treatment relationship and frequency of examination, the nature and extent of treatment, the absence or presence of evidence to support of the opinion, consistency with other findings, and the source's degree of specialization. See Id.

### A.    The Newton Opinion

Here, the ALJ did not state what weight he gave Dr. Newton's opinion, nor the reasons for the weight given. Such a finding, however, is necessary for this Court to decide the issues in this appeal. See Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) ("A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why . . ."). Accordingly, this matter must be remanded.

The Defendant points out that Dr. Newton's opinion was considered and weighed by the State agency consultants who gave it great weight (T. 72, 96), and that the ALJ considered and weighed the opinions of the State agency consultants and gave them some weight (T. 30). [Doc. 11 at 14-15].

As correctly noted by the Plaintiff, however, such post-hoc rationalization cannot rehabilitate the ALJ's failure to explain his findings and conclusions as required by the regulations. See Radford, 734 F.3d 288 at 295.

Moreover, the error was not harmless. In the instant case, the ALJ's denial of benefits hinged upon his determination that Plaintiff's disability-qualifying symptoms were predominantly caused by his substance use rather than an underlying psychological impairment. In reaching this conclusion, the ALJ only referenced-by-name the medical opinions of Dr. Newton, Dr. Murray, and the two State agency consultants (whose opinions heavily relied upon the opinion of Dr. Newton). Generally, Dr. Newton's opinion was adverse to a determination of disability, and Dr. Murray's opinion was favorable to a determination of disability. In further contrast, Dr. Newton only saw the Plaintiff once and made no findings related to the impact of his substance use, whereas Dr. Murray treated the Plaintiff for over six months, both when Plaintiff was using substances (July 2014) and when Plaintiff was sober (November 2014).

By denying the Plaintiff benefits, it appears that the ALJ relied more heavily on Dr. Newton than Dr. Murray in determining that the Plaintiff's disability-qualifying symptoms were predominantly caused by his substance use. Without an explanation as to why he found Dr. Newton more credible,

14

however, this decision is impossible to review. On this pivotal issue of the nature and severity of Plaintiff's mental impairments while sober, the ALJ must explain why he followed the seemingly thin opinion of Dr. Newton rather than the opinion of Dr. Murray, which would appear on the surface to be supported by substantially greater information. Accordingly, this matter must be remanded.

## B. The Murray Opinion

Plaintiff also argues that the ALJ erred in not giving the opinion of Dr. Murray, Plaintiff's treating provider, controlling weight. Unlike Dr. Newton, who only saw the Plaintiff once, Dr. Murray was Plaintiff's treating provider for more than six months. Further unlike Dr. Newton, who appears to have been unaware of the Plaintiff's substance use, Dr. Murray treated the Plaintiff both when the Plaintiff was struggling with alcohol (July 2014), and immediately following the Plaintiff's successful completion of a forty-day substance use treatment program (November 2014). Nonetheless, on the pivotal issue of the nature and severity of the Plaintiff's impairments while sober, the ALJ gave little weight to Dr. Murray's opinion that the Plaintiff's mental impairments, independent of his substance use, caused marked difficulties or limitations in the Plaintiff's socialization and concentration.

If a medical opinion from a treating source is well supported by medically acceptable techniques and is not inconsistent with the other substantial evidence in the record, the opinion is entitled to controlling weight. 20 C.F.R. §§ 404.1527(c), 416.927(c). Otherwise, the ALJ need not give the opinion any significant weight, but must give "good reasons" for the weight given. Id.

Here, the ALJ explained that he gave the treating provider's opinion "little weight" because, among other things, Dr. Murray's opinion was based on a short term observation of the Plaintiff. This reasoning is curious, however, especially given the fact that the ALJ appears to have given greater weight to the opinion of Dr. Newton who only saw the Plaintiff once. As noted *supra*, the ALJ may have had good reasons for attributing more weight to Dr. Newton than Dr. Murray, but because the ALJ failed to explain what those reasons are, this Court cannot conduct a meaningful review. Accordingly, this matter must be remanded for further proceedings. On remand, the ALJ should also consider Dr. Murray's third opinion, which the Appeals Council incorporated into the record, in reevaluating the consistency of Dr. Murray's opinions and the materiality of Plaintiff's substance use.

**O R D E R**

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 9] is **GRANTED**, and the Defendant's Motion for Summary Judgment [Doc. 10] is **DENIED**. Pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and the case is hereby **REMANDED** for further administrative proceedings consistent with this opinion. A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: August 1, 2016

Martin Reidinger
United States District Judge